UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELENA FEDOROVA,

        Plaintiff,                              Case No. 1:22-cv-991

v.                                               Hon. Hala Y. Jarbou

WILLIAM P. FOLEY, II, *et al.*,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

      *Pro se* plaintiff Elena Fedorova ("Fedorova") filed the present lawsuit related to the mortgage of property in Hastings, Michigan. This matter is now before the Court on defendant Exela Technologies, Inc.'s combined motion to dismiss for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 86).

      **I.**      **Fedorova's complaint**

      The Court previously set out the factual background for Fedorova's lawsuit:

      Fedorova applied for a $135,000 loan with Perl Mortgage, Inc. ("Perl") on June 15, 2016, in order to purchase a home located at 5757 Saggio Road in Hastings, Michigan. (Fedorova Loan Application, ECF No. 1-2, PageID.123.) Fedorova signed a promissory note on July 29, 2016. (Note, ECF No. 1-6, PageID.134.) The note states: "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'" (*Id.*)

      Perl transferred the servicing rights on the loan to Caliber Home Loans, Inc. ("Caliber"), who became the new servicer. Perl notified Fedorova of the transfer. (Notice of Assignment, ECF No. 1-11, PageID.146.) Later in 2019, Caliber also told Fedorova that it had become the new servicer of the loan. (5/3/2019 Letter from Caliber to Fedorova, ECF No. 1-7, PageID.140.) In the same letter, Caliber also informed Fedorova that PennyMac Loan Services, LLC ("PennyMac") became the servicer of the loan on or around May 2, 2019. (*Id.*) PennyMac subsequently

1

> notified Fedorova that it was now the owner and servicer of the loan. (5/10/2019 Letter from PennyMac to Fedorova, ECF No. 1-8, PageID.142-143.)
>
> On October 31, 2019, PennyMac informed Fedorova that her loan was in default because she failed to make her monthly payments. (Notice of Default, ECF No. 1-22, PageID.178.) Finally, on October 8, 2022, Potestivo & Associates, P.C. provided Fedorova with a notice of foreclosure on behalf of PennyMac. (Notice of Foreclosure, ECF No. 1-33, PageID.253.) As of that date, Fedorova owed $142,308.50 on the loan. (*Id.*)

Opinion (ECF No. 196, PageID.1409-1410).

## II.  Exela's Motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1)

As an initial matter, while defendant Exela Technologies, Inc. ("Exela") filed a motion to dismiss for lack of subject matter jurisdiction, it does not address the jurisdictional issue other than stating a legal standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(1). *See* Brief (ECF No. 86, PageID.757). Exela's brief is directed at Fedorova's failure to state a claim under Fed. R. Civ. P. 12(b)(6). *See id*. at PageID.759-774. Accordingly, Exela's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) should be denied.

## III.  Exela's Motion for dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

### A.  Legal Standard

Exela has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a

2

>defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). While *pro se* pleadings are to be liberally construed, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "this court is not required to conjure up unpled allegations." *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004). Thus, "an unadorned, the - defendant - unlawfully - harmed - me accusation" is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678. Finally, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

### B. Discussion

#### 1. The alleged criminal scheme

Fedorova's 119-page complaint is a collection of allegations against over 100 defendants spread across the country. The complaint appears to consist of 28 counts, many of which contain multiple claims against multiple defendants.[1] Fedorova's complaint appears based

---

[1] Fedorova appears to have alleged 28 claims or counts: (1) First Claim for Fraud and Conspiracy to defraud (PageID.43-55, 61); (2) Unnumbered "Claims against defendants Mark W. Sheldon; Detroit Legal News Publishing, LLC; Bradley L. Thompson II,; Anna Graham under FDCPA; RESPA; RICO; Common Fraud; Conspiracy to Defraud; Accessories to Theft of Property over $100,000.00, individually and as a group" (PageID.56-61); (3) Second Claim for Forgery (PageID.62-65); (4) Third Claim for Breach of Contract (PageID.65-66); (5) Fourth Claim for Bad Faith (PageID.67-68); (6) Fifth Claim for Violation of FDCPA (PageID.68-70); (7) Sixth Claim for Violations of RESPA (PageID.70-71); (8) Seventh Claim for Mail Fraud and Racket (PageID.71-74); (9) Claim for Violation of Truth in Lending Act (PageID.74-76); (10) Eighth Claim for Trespass and Invasion of Privacy (PageID.76-79); (11) Ninth Claim for Slander of Title (PageID.79-81); (12) Tenth Claim for Violation of FCRA (PageID.81-83); (13) "Claim for compensation under Federal Tort Claims Act" (PageID.83-86); (14) "Claim for declaratory and injunctive

on a theory that the American real estate mortgage system is a criminal scheme and that the defendants (including such diverse entities and governmental agencies as JP Morgan Chase, the American Land Title Association, Detroit Legal News Publishing, LLC, the United States Department of Justice, the Security and Exchange Commission, the Florida Office of Governor DeSantis Notary Section, the Illinois Attorney Registration and Disciplinary Committee [sic], and the State Bar of California) are all part of that criminal scheme.

By way of background, Fedorova alleged that former defendant William P. Foley, II ("Foley") is "one of master minds [sic] and leaders behind this entire criminal scheme" having "created a sophisticated enterprise 'Foley's Enterprise' consisting from [sic] thousands [sic] empty shell corporations, most of which exist in name only (like 850+ ServiceLinks)."  Compl. at PageID.14.  Fedorova alleged among other things that,

> Foley's Enterprise under his leadership and guidance mercilessly gaslight Fedorova with letters, notices and demands on pretender Servicers letterheads to extort money as revenues of unknown to Fedorova Investment Bank [sic]. Foley's website under his guidance and directions issues instructions to unknown to Fedorova employees [sic] who divert her payments without crediting a cent to her principal or escrow.

---

relief agaisnt [sic] all agencies including state bar associations and attorney generals offices" (PageID.86-88); (15) "Claim against Department of Justice ('DOJ') and demand to act" (PageID.88-91); (16) "Claim agaisnt [sic] the Senate Banking Committee, Housing and Urban Affairs Committee and demand to act" (PageID.91-93); (17) "Claim against CFPB and demand to act" (PageID.94-96); (18) "Claim agaisnt [sic] Michigan DIFS and demand to act" (PageID.96-99); (19) "Claim agaisnt [sic] Michigan Office of Attorney General and demand to act"  (PageID.99-100); (20) "Claim against Florida, Nevada, New York, Wisconsin, Georgia and California Attorney Generals and demand to act" (PageID.101-105); (21) "Claim agaisnt [sic] Florida Governor Desantis notary section and demand to act" (PageID.105); (22) "Claim agaisnt [sic] SEC and demand to act" (PageID.105-111); (23) "Claim against FTC and FDIC and demand to act" (PageID.111-113); (24) "Claim agaisnt [sic] CA Department of Business Oversignt [sic]; and demand to act" (PageID.113); (25) "Claim against Defendnats [sic] Bar Associations and demand to act" (PageID.113-115); (26) "Claim against Barry County Recorder" (PageID.115); (27) "Claim for quiet title under Michigan 600.2932 Quieting title" (PageID.115-116); and, (28) "Claim for damages under Federal Tort Claims Act. Against Defendants HUD/Ginnie Mae and SEC" (PageID.116).

4

*Id*.[2] Plaintiff also alleged that former defendant Frank Bisigano ("Bisigano") "is a former CEO of JP Morgan Chase Bank who operates a sophisticated enterprise (Bisignano's Enterprise) in terms of receipt, collection, depositing, and disbursement of funds." *Id*. at PageID.17. "Biginano's [sic] Enterprise is printing and mailing Fedorova 'billing statements'; Notices; letters; 'Modifications'; 'Payoffs' and other fictitious documents on actor's Penny Mac letterheads." *Id*.

### 2. Allegations against defendant Exela

Fedorova's complaint set out the following allegations against defendant Exela. "All Fedorova's payments are collected and processed by Mr. Chadha and Mr. Cogbun's Exela Technologies, Inc. and their sham conduits from various post offices P.O. Boxes via complex lockbox money laundering operation, for unknown to Fedorova parties [sic]." Compl. at ¶ 13, PageID.7. When Fedorova found alternative financing, defendant FiServ, Inc. ("FiServ")

> sent Fedorova unsigned "Payoff Statement" on PennyMac's letterhead which lacked any references to her alleged creditor; and demanded payments to FiServ's "Cash Management" or Exela Technologies, Inc. or to an unverified account with JP Morgan Chase who suddenly replaced Bank of America as alleged "banking institution" for undisclosed to Fedorova parties [sic].

*Id*. at ¶ 16, PageID.8.

Fedorova later identified defendant Exela as follows:

> **Exela Technologies Inc.**, ("Exela") Servicer who owns various subservicers, who collects [sic] and process Fedorova's payments according to instructions and guidelines from Foley and Biginano's Enterprises with whom Exela has various lockbox and indemnification agreements [sic] Exela is registered in Delaware, resident of Texas who owns and controls various sub-servicers [below] who collects [sic] Fedorova's payments from various P.O. Boxes in Texas and California and process them for unknown [sic] to her parties.

*Id*. at PageID.18 (emphasis in original).

---

[2] Fedorova's complaint uses the term "gaslight", a verb which means "To manipulate (a person) by psychological means into questioning his or her own sanity." *See Oxford English Dictionary*, https://www.oed.com .

5

Fedorova identified the following former defendants associated with Exela. SourceHOV, LLC "is a branch of Exela and Sub-Servicer designated to receive and process Fedorova's payments via overnight delivery." *Id*.  Transcentra, Inc. "is a branch of Exela and Sub-Servicer designated to receive and process Fedorova's payments from P.O. Boxes in Dallas TX post office." *Id*.  Par Chadha is the Chairman of both Exela and SourceHOV.  Ronald Cogburn "served as CEO of Exela Technologies from 2017 to 2022", "served as CEO of SourceHOV starting in 2013," and "has been part of companies that were predecessors to SourceHOV since 1993 providing executive leadership." *Id*.

Fedorova alleged that defendant Bank of America, N.A. ("BANA") is a "Co-conspirator who provide [sic] bank accounts to fellow investment banks who open it under name of designated 'servicers' - here Caliber Home Loans, Inc. where Servicer Exela deposted [sic] Fedorova's payments." *Id*. at PageID.20.  Fedorova's payments on her loan "regardless whose name or P.O. Box appeared on the billing statements - were collected and processed by Exela Technologies, Inc. via its sham conduits Transcentra, Inc. and Regulus, LLC." *Id*. at ¶ 58, PageID.30.  "All Fedorova's money are collected by Exela Technologies and its sham conduits from various P.O. boxes in Dallas TX and Los Angeles CA, where PennyMac has no offices' [sic]". *Id*. at ¶ 78, PageID.35.

Fedorova has named defendant Exela in the following claims.  In her first claim, Fedorova alleged fraud, *i.e*., that "the real Servicers – Black Knight, FiServ, Exela, CoreLogic, Covius, Franklin, Computershare – are hiding behind fake Servicers names on the letterheads mailed and collected from various P.O. Boxes and additional layers of various sub servicers each of whom perform certain tasks assigned to them by Foley's Black Knight via password to his secured platform." *Id*. at ¶ 118, PageID.45.

In her fifth claim, Fedorova alleged that Exela violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*. by providing misleading information. *Id*. at PageID.68, ¶¶ 182-184.

In her seventh claim, Fedorova alleged that Exela violated the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1962(c). *Id*. at PageID.71-73, ¶¶ 196, 199.[3]

### 3. Discussion

#### a. Group pleading

Exela seeks to dismiss Fedorova's claims that "servicers" violated the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2601, *et seq*., committed trespass, and invaded her privacy. *See* Compl. at PageID.70-74, 76-79. With respect to these claims, Fedorova's complaint is an example of "group pleading," a litigation tactic which raises claims against numerous defendants without regard to a defendant's particular actions. As this Court observed in *Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125 (W.D. Mich. 2019)

> Courser's First Amended Complaint—steeped in conspiracy allegations— is a prime example of a tactic known as group pleading. As one court has explained, "[a] complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012).

*Courser*, 404 F. Supp. 3d at 1140.

Here, Fedorova did not allege any particular action taken by Exela which would support claims for a RESPA violation, trespass, or invasion of privacy. *See* Fed. R. Civ. P. 8(a)(2) ("[a] pleading that states a claim for relief must contain: . . . a short and plain statement of the

---

[3] The Court notes that Fedorova mentioned Exela in a claim against a number of former defendants, *i.e.*, her "Claim against Florida, Nevada, New York, Wisconsin, Georgia and California Attorney Generals and demand to act" (PageID.101-103, ¶ 284). However, this claim is directed at state officials, not Exela.

claim showing that the pleader is entitled to relief[.]"). Accordingly, all of these claims should be dismissed.

### b. FDCPA

The gist of Fedorova's FDCPA claim is that, "[i]t is unlawful for a 'regulated person' to make an 'inaccurate, untrue, or deceptive statement or claim in a communication to collect a debt .' MC.L. § 445.252(e).71 and 15 U.S.C. § 1692-1692p." Compl. at ¶ 180, PageID.68. Fedorova's allegation against Exela is that it refused to identify itself in one or more DVRs (debt validation requests):

> 182. Fedorova many times submitted her DVR to all collectors - including those who do actual collection -Black Knight, FiServ and Exela - but refused to identify themselves. Her demands to validate with [sic] either ignored and not answered; or answered in a deceptive manner, without responds [sic] to key questions about proof of existence and ownership of alleged "debt".
>
> 183. Under the FDCPA, if a debt collector does any of the restricted activities listed below it is considered a FDCPA violation. It is a FDCPA violation to make misleading or false representation through a phone call, email, voice mail or letter. Misleading information or FDCPA violations include: Mislead the consumer with the ownership, amount or the status of the debt; making misleading statements to make an individual believe the collection agency is affiliated with the state of federal government and the debt collection documents are official government documents.
>
> 184. All elements are present. Mr. Foley's Black Knight and Mr. Bisignano's FiServ, acting under PennyMac and Caliber names, are actively gasligting [sic] Fedorova with fraudulent demands, purportedly under authority of GinnieMae, to coerce Fedorova to make payments and sign promises to pay PennyMac, who is merely renting their names to this illegal scheme.

Compl. at PageID.68-69.

Fedorova has failed to allege the specific actions which Exela took against her, when these actions occurred, and how these actions violated specific provisions of the FDCPA. Fedorova's FDCPA claim against Exela is nothing more than "an unadorned, the - defendant -

unlawfully - harmed - me accusation" which is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678. Accordingly, Fedorova's FDCPA claim should be dismissed.

### c.     RICO claim

In her RICO claim, Fedorova alleged that a number of defendants, including Exela, violated 18 U.S.C. § 1962(c). PageID.71, ¶ 195.

> Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Put differently, a violation of this statute requires: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.I. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Plaintiff must allege each of these elements to state a claim. *Heinrich v. Waiting Angels Adoption Services, Inc.*, 668 F.3d 393, 404 (6th Cir. 2012). "Racketeering activity consists of acts which are indictable under a number of federal statutes listed in 18 U.S.C. § 1961(1)(B)," including, among other things, mail fraud under 18 U.S.C. § 1341. *Id*. To show a pattern of racketeering activity, a plaintiff must plead, *inter alia*, at least two predicate acts occurring within a ten-year period. 18 U.S.C. § 1961(5).

*Kim v. City of Ionia*, No. 1:20-cv-843, 2021 WL 5053967 at *9 (W.D. Mich. Jan. 8, 2021).

Plaintiff's only allegation against Exela for the RICO violation appears in ¶ 196:

> 196. All Fedorova's Defendants are engaged in a wide-spread sophisticated pattern racketeering activities. All their income derives from racket and collection of imaginary "debt" either directly via chain of sham conduits [Foley's Fidelity/Black Knight/ServiceLink; Biginano's FiServ; Cogburn's Exela who use pretender Servicers's [sic] names like Caliber and PennyMac.] or indirectly. Although advertised as financial technology companies, Defendants, in a very real sense, are prime players in the creation [sic] maintenance, and promotion of securitization infrastructures and the creation, maintenance, and prime players in fake collections and foreclosure infrastructure that plagues not only homeowners but virtually everyone else who is a party to what appears as an installment debt. All Defendants use mail in their criminal activities to extort money from homeowners as additional revenues. Black Knight and FiServ are also all involved in the creation and use of false fabricated documents that refer to nonexistent transactions for the sole purpose of achieving a remedy to which nobody is entitled to receive - foreclosure since Black Knight and FiServ are the central command of all illegal foreclosures based on false claims of securitization of debt.

PageID.71-72.

Here, Fedorova failed to allege the specific actions which Exela took against her, when these occurred, and how these actions established the elements of a RICO claim. Fedorova's RICO claim against Exela is nothing more than "an unadorned, the - defendant - unlawfully - harmed - me accusation" which is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678. Accordingly, Fedorova's RICO claim should be dismissed.

### d. Federal Fraud Claim

In Fedorova's "FIRST CLAIM FOR RELIEF: FRAUD, INLCUIDNG [sic] FRAUD BY INDUCEMENT; FRAUD IN THE FACTUM; CONSPIRACY TO DEFRAUD INDIVIDUALLY AND AS A GROUP; **Against all parties except Recorders and Agencies**[.]" Compl. at PageID.43 (emphasis in original), Fedorova set forth allegations against some defendants including Exela.

Fedorova alleged that her fraud claim against Exela is based on "Federal fraud law" as defined in a criminal statute, 18 U.S.C. § 1001:

> 111. Federal fraud law is defined under 18 U.S.C. § 1001-as knowingly and intentionally doing any of the following: (I) Falsifying, concealing, or covering up by any trick, scheme, or device a material fact; (2) Making any materially false, fictitious, or fraudulent statement or representation; or (3) Making or using any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

*Id.*[4]

---

[4] 18 U.S.C. § 1001 provides in pertinent part as follows:

"(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense

In this claim, Fedorova alleged that Exela is one of a group of "real servicers" who committed fraud because

> 112. Said Defendants, individually and as a group, initiated a void, fraudulent transaction which was intentionally misrepresented to Fedorova as a "loan" with the party – Perl – who was not a lender and had no lending intent. There was no meeting of minds that-so-ever. While Fedorova intended to get a loan, Perl's intention was to get fees for inducing Fedorova to sign documents; and her undisclosed parties wanted to sell securities backed by information about Fedorova's transaction where nobody loaned her any real money since the base securitization scheme was established and never retired.

Compl. at PageID.43.  Plaintiff continued:

> 116. In sum, Fedorova did not get what they [sic] applied for and the investment banks did not pay money to her or on her behalf because they wanted to loan money. They wanted to sell securities and they needed Fedorova to do it. This transaction was camouflaged by alleged involvement of Ginnie Mae as a Guarantor; and alleged "Title Insurance" - which added more realistic flavor to this fraud and not triggered any suspicions in Fedorova who only started to understand that she was royally defrauded after HUD finally responded her FOIA after two years of delays.
>
> 117. Roles of "servicers" are played by former Countrywide Financial - now Caliber and PennyMac - who are perfectly aware that they are not multi-billion companies with "millions mortgages" [sic] under management, but thinly capitalized group of criminals who at all times, since 1999 are paid for playing roles of major players, which is promoted by Wall Street Banks via all media sources. PennyMac does not buy any "default debt" or issue any "mortgage backed Securities" for a simple reason - they don't have money to buy; and nobody who sell it to them [sic].
>
> 118. The real Servicers - Black Knight, FiServ, **Exela**, CoreLogic, Covius, Franklin, Computershare - are hiding behind fake Servicers names on the letterheads mailed and collected from various P.O. Boxes and additional layers of various sub servicers each of whom perform certain tasks assigned to them by Foley's Black Knight via password to his secured platform.

Compl. at PageID.44-45 (emphasis added).

---

under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years."

Fedorova cannot maintain a private civil claim against Exela for the alleged violation of 18 U.S.C. § 1001.  Nor can Fedorova enforce this federal criminal statute against Exela.  "[T]he general rule is that a private right of action is not maintainable under a criminal statute." *American Postal Workers Union, AFL-CIO, Detroit Local v. Independent Postal System of America, Inc.*, 481 F.2d 90, 93 (6th Cir. 1973).  "Equally important is the firmly established principle that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions." *Id*. (internal quotation marks omitted).

"[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).  In short,

> "There is no authority to allow a private citizen to institute a criminal action in a federal court; that power is vested exclusively in the executive branch." *See United States v. Nixon*, 418 U.S. 683, 693, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Williams v. Finnegan*, 2014 WL 2434590 at *2 (N.D. Ohio May 29, 2014). **Consequently, there exists no independent, private cause of action for the alleged violation of 18 U.S.C. § 1001**.

*Shoemake v. Mansfield City School District Board of Education*, 61 F. Supp. 3d 704, 711 (N.D. Ohio 2014) (emphasis added).  Accordingly, Fedorova's federal fraud claim against Exela should be dismissed.

### IV.     RECOMMENDATION

Accordingly, I respectfully recommend that defendant Exela's combined motion to dismiss (ECF No. 86) be **DENIED** as to its request to dismiss the complaint for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), be **GRANTED** as to its request to dismiss the complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and that Exela be **DISMISSED** from this action.

Entered:  July 7, 2023                    /s/ Ray Kent
                                          RAY KENT
                                          United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).