UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELENA FEDOROVA,

                    Plaintiff,              Case No. 1:22-cv-991

v.                                    Hon. Hala Y. Jarbou

WILLIAM P. FOLEY, II, *et al.*,

                    Defendants.

_____/

## REPORT AND RECOMMENDATION

     *Pro se* plaintiff, Elena Fedorova ("Fedorova") filed the present lawsuit related to the mortgage of property on Hastings, Michigan.  This matter is now before the Court on defendant PennyMac Loan Services, LLC's motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 82).

     **I.**     **Fedorova's complaint**

     The Court previously set out the factual background for Fedorova's lawsuit:

     Fedorova applied for a $135,000 loan with Perl Mortgage, Inc. ("Perl") on June 15, 2016, in order to purchase a home located at 5757 Saggio Road in Hastings, Michigan.  (Fedorova Loan Application, ECF No. 1-2, PageID.123.) Fedorova signed a promissory note on July 29, 2016.  (Note, ECF No. 1-6, PageID.134.)  The note states: "I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder.'"  (*Id.*)

     Perl transferred the servicing rights on the loan to Caliber Home Loans, Inc. ("Caliber"), who became the new servicer.  Perl notified Fedorova of the transfer. (Notice of Assignment, ECF No. 1-11, PageID.146.)  Later in 2019, Caliber also told Fedorova that it had become the new servicer of the loan.  (5/3/2019 Letter from Caliber to Fedorova, ECF No. 1-7, PageID.140.)  In the same letter, Caliber also informed Fedorova that PennyMac Loan Services, LLC ("PennyMac") became the servicer of the loan on or around May 2, 2019.  (*Id.*)  PennyMac subsequently

notified Fedorova that it was now the owner and servicer of the loan. (5/10/2019 Letter from PennyMac to Fedorova, ECF No. 1-8, PageID.142-143.)

On October 31, 2019, PennyMac informed Fedorova that her loan was in default because she failed to make her monthly payments. (Notice of Default, ECF No. 1-22, PageID.178.) Finally, on October 8, 2022, Potestivo & Associates, P.C. provided Fedorova with a notice of foreclosure on behalf of PennyMac. (Notice of Foreclosure, ECF No. 1-33, PageID.253.) As of that date, Fedorova owed $142,308.50 on the loan. (*Id.*)

Opinion (ECF No. 196, PageID.1409-1410).

## II.    PennyMac's Motion for dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

### A.    Legal Standard

PennyMac has moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. A complaint may be dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). While *pro se* pleadings are to be liberally construed, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "this court is not required to conjure up unpled allegations." *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004). Thus,

"an unadorned, the - defendant - unlawfully - harmed - me accusation" is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678.    Finally, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

### B.    The alleged criminal scheme

Fedorova's 119-page complaint is a collection of allegations against over 100 defendants spread across the country.    The complaint appears to consist of 28 counts, many of which contain multiple claims against multiple defendants.[1]    Fedorova's complaint appears based on a theory that the American real estate mortgage system is a criminal scheme and that the defendants (including such diverse entities and governmental agencies as JP Morgan Chase, the

---

[1] Fedorova appears to have alleged 28 claims or counts: (1) First Claim for Fraud and Conspiracy to defraud (PageID.43-55, 61); (2) Unnumbered "Claims against defendants Mark W. Sheldon; Detroit Legal News Publishing, LLC; Bradley L. Thompson II,; Anna Graham under FDCPA; RESPA; RICO; Common Fraud; Conspiracy to Defraud; Accessories to Theft of Property over $100,000.00, individually and as a group" (PageID.56-61); (3) Second Claim for Forgery (PageID.62-65); (4) Third Claim for Breach of Contract (PageID.65-66); (5) Fourth Claim for Bad Faith (PageID.67-68); (6) Fifth Claim for Violation of FDCPA (PageID.68-70); (7) Sixth Claim for Violations of RESPA (PageID.70-71); (8) Seventh Claim for Mail Fraud and Racket (PageID.71-74); (9) Claim for Violation of Truth in Lending Act (PageID.74-76); (10) Eighth Claim for Trespass and Invasion of Privacy (PageID.76-79); (11) Ninth Claim for Slander of Title (PageID.79-81); (12) Tenth Claim for Violation of FCRA (PageID.81-83); (13) "Claim for compensation under Federal Tort Claims Act" (PageID.83-86); (14) "Claim for declaratory and injunctive relief agaisnt [sic] all agencies including state bar associations and attorney generals offices" (PageID.86-88); (15) "Claim against Department of Justice ('DOJ') and demand to act" (PageID.88-91); (16) "Claim agaisnt [sic] the Senate Banking Committee, Housing and Urban Affairs Committee and demand to act" (PageID.91-93); (17) "Claim against CFPB and demand to act" (PageID.94-96); (18) "Claim agaisnt [sic] Michigan DIFS and demand to act" (PageID.96-99); (19) "Claim agaisnt [sic] Michigan Office of Attorney General and demand to act" (PageID.99-100); (20) "Claim against Florida, Nevada, New York, Wisconsin, Georgia and California Attorney Generals and demand to act" (PageID.101-105); (21) "Claim against [sic] Florida Governor Desantis notary section and demand to act" (PageID.105); (22) "Claim against [sic] SEC and demand to act" (PageID.105-111); (23) "Claim against FTC and FDIC and demand to act" (PageID.111-113); (24) "Claim agaisnt [sic] CA Department of Business Oversignt [sic]; and demand to act" (PageID.113); (25) "Claim against Defednats [sic] Bar Associations and demand to act" (PageID.113-115); (26) "Claim against Barry County Recorder" (PageID.115); (27) "Claim for quiet title under Michigan 600.2932 Quieting title" (PageID.115-116); and, (28) "Claim for damages under Federal Tort Claims Act. Against Defendants HUD/Ginnie Mae and SEC" (PageID.116).

American Land Title Association, Detroit Legal News Publishing, LLC, the United States Department of Justice, the Security and Exchange Commission, the Florida Office of Governor DeSantis Notary Section, the Illinois Attorney Registration and Disciplinary Committee [sic],  and the State Bar of California) are all part of that criminal scheme.

By way of background, Fedorova alleged that former defendant William P. Foley, II ("Foley") is "one of master minds [sic] and leaders behind this entire criminal scheme" having "created a sophisticated enterprise 'Foley's Enterprise' consisting from [sic] thousands [sic] empty shell corporations, most of which exist in name only (like 850+ ServiceLinks)."  Compl. at PageID.14.  Fedorova alleged among other things that,

> Foley's Enterprise under his leadership and guidance mercilessly gaslight Fedorova with letters, notices and demands on pretender Servicers letterheads to extort money as revenues of unknown to Fedorova Investment Bank [sic]. Foley's website under his guidance and directions issues instructions to unknown to Fedorova employees [sic] who divert her payments without crediting a cent to her principal or escrow.

*Id*.[2] Plaintiff also alleged that former defendant Frank Bisigano ("Bisigano") "is a former CEO of JP Morgan Chase Bank who operates a sophisticated enterprise (Bisignano's Enterprise) in terms of receipt, collection, depositing, and disbursement of funds."  *Id*. at PageID.17.  "Biginano's [sic] Enterprise is printing and mailing Fedorova 'billing statements'; Notices; letters; 'Modifications'; 'Payoffs' and other fictitious documents on actor's Penny Mac letterheads."  *Id*.

### C.    The allegations against defendant PennyMac

### 1.    PennyMac

Fedorova identified defendant PennyMac as follows:

**PennyMac Loan Servicing, LLC**, ("PennyMac", fna Countrywide Financial, Inc.) a low-capitalized entity who rents their names for a fee to be used on letterheads prepared by real Servicers from Foley/Bisignano Enterprises.  PennyMac pretends

---

[2] Fedorova's complaint uses the term "gaslight", a verb which means "To manipulate (a person) by psychological means into questioning his or her own sanity." *See Oxford English Dictionary*, https://www.oed.com .

to be Fedorova's Servicer.  The business of PennyMac is to pose as a creditor or an agent representing a creditor when in fact it is neither.  Despite correspondence and notices posted under the name of PennyMac by unknown people who sign nothing, it actually does not receive nor disburse any money.  The entire business model is devoted to steering consumers into default with false statements of authority and false reports that are not related to any data input by any PennyMac employee.  They also like to lie about "audits" when "loans" are "boarded," which seems to be something that never actually happens.  Nobody actually says what PennyMac does.  It often poses as creditor when it is in fact acting as an agent for third parties.  Those third parties, when pushed, cannot supply any corroborative evidence that they own any debt, note or mortgage.  They have always been parties to Purchase and Assumption Agreements (both titled as such and using other titles) in which the complete ownership and control of any closing and servicing of any transaction with homeowners is vested in those third parties.  In short, the business of PennyMac has [sic] limited to collecting royalties for use of its name - the same as national banks [here: BONY] who pose as trustees of nonexistent trusts implying nonexistent trust accounts with nonexisting unpaid loan accounts. PennyMac has also allowed the hiring of robowitnesses to testify in court in sworn testimony - asserting that PennyMac is a servicer who receives, deposits, and distributes payments from homeowners to creditors.  This has always been false.  Such witnesses testify that reports offered in court are a compilation of data produced from  PennyMac's business of collecting and distributing money.  This is also false.  The financial technology (FINTECH) companies that perform all such work are not subject to any control or direction from PennyMac, nor are they working indirectly on PennyMac's behalf.  In short, virtually all activities attributed to PennyMac are false.  Legally they could not be the foundation for any admissible evidence in a court of law nor the foundation for any statement or notice (e.g., a notice of default) that FINTECH companies mail under the letterhead of Ocwen.  PennyMac and related companies [here: Caliber] appear in the chain of paper in hundreds of thousands of transactions that are falsely labeled as "mortgage loans [sic].  Without PennyMac's 's [sic] role in foreclosures claiming trillions of dollars due, there would have been no such foreclosures.  If the foreclosure actors used the name of any other party, who was actually involved in the money trail, they would have lost each foreclosure attempt, because there is no unpaid loan account on the books and records of any FINTECH company or any creditor named in the false statements, notes and claims filed by lawyers representing foreclosure mills.  Thus, the potential liability for PennyMac, related companies, and individual management is in the trillions.

*Id*. at PageID.21-22 (emphasis in original).[3]

---

[3] Fedorova also referred to a former defendant and related entity:

"**PennyMac Financial, Inc**, ('PNF') as PennyMac Loan Servicing, LLC parent company, low-capitalized entity who sells 'securities' to investors purportedly 'backed' by PNF 'servicing rights' which PNF does not have since they don't service anyone." Compl. at PageID.22 (emphasis in original).

### 2.      Timeline for claims against PennyMac

"On May 2, 2019, Fedorova received a suspicious unsigned letter on PennyMac'

[sic] letterhead informing that they are new Servicers for her loan."  Compl. at PageID.29.

Defendants "erupted with lies" to explain the transfer.

56.    On May 3, 2019 [former defendant] Caliber claimed ownership of the implied "debt" and in the same document, claims the "loan" is in a pooled security (whatever that means). On May 10, 2019 PennyMac claims ownership of the "loan" but not necessarily the lien.  On May 17, 2019 Caliber said that the Owner/Investor is Ginnie Mae and Caliber is merely Servicer.  On May 23, 2019 PennyMac's "loan administration" (at large) claimed that PennyMac is owner/investor. Ex. ___ [no exhibit identified].  None of these companies were able to provide any collaborative [sic] evidence in support to their statements. . .

57.    Billing statements from "PennyMac" (in fact: from FiServ) directed Fedorova to send her payments to the SAME post office in Dallas TX, different P. 0. Box 660929 Ex. ___ [no exhibit identified] where neither Caliber or PennyMac do not have offices [sic].

58.    Fedorova requested cancelled checks from her bank, and discovered that all her payments - regardless whose name or P.O. Box appeared on the billing statements - were collected and processed by Exela Technologies, Inc. via its sham conduits Transcentra, Inc. and Regulus, LLC. Ex.5.  Checks sent to "PennyMac" were deposited by Regulus LLC who do not have any references to PennyMac, even though Fedorova sent it to P.O. Box with PennyMac's name on it.  Fedorova later discovered via FOIA requests to USPS that all billing statements - appeared on PennyMac and Caliber letterheads - were printed and mailed to her by another company, FiServ, Inc. . . .

*Id*. at PageID.30-31.

"On June 4, 2019, Fedorova submitted her Whistleblower Tip to Securities and

Exchange Committee" (SEC) and asked it to investigate various matters including the "alleged

'investor' and 'issuer' of Ginnie Mae Mortgage Backed Securities by PennyMac Loan Servicing,

LLC, who as Fedorova learned are a renamed part of Countrywide Financial, Inc."  Compl. at

PageID.6.  However, the SEC refused to conduct any investigation based on Fedorova's tip.  *Id*.

64.    On May 31, 2020 "Perl'" purportedly hired [former defendant] MERS [aka ICE] as its 'nominee' to transfer Fedorova's 'Mortgage' (which Perl allegedly

'sold' many times before in various forms to various parties) to PennyMac (one year after Perl was dissolved and PennyMac started claiming its 'ownership') for 'good and valuable consideration' the amount of which was never disclosed to Fedorova- over heads of Caliber, GinnieMae, alleged 'Trust' and Trustee BONY who either deny or not aware of any described transactions which never happened and cannot happen in the real life. Caliber and PennyMac repeatedly refused to respond even simple questions - who is the Seller of Fedorova's alleged 'loan'; when this sale took place, and who was the buyer.  Ginnie Mae ignored all communication with Fedorova.

*Id*. at PageID.32.

81.    In sum, nothing attributed to PennyMac is done by PennyMac or under PennyMac's authority. Only their name is used by myriad of undisclosed companies who all refusing to provide disclosures to Fedorova why they collect some imaginary debt and for whom.  On June 1, 2020, or one year after "PennyMac" started to claim its "ownership" someone hired document forgery mill Nationwide Title Clearing Corporation (who is repeatedly sued by Attorney Generals for documents' forgery) who prepared flagrantly forged Assignment of her Mortgage - without Note (which is a legal nullity in all jurisdiction) from MERS aka Intercontinental Exchange, Inc as an agent for Perl to PennyMac.

*Id*. at PageID.35-36.  In this regard, Fedorova identified former defendant NTC (National Title Clearing, LLC) as a "Document forgery factory, sub-forger".  Compl. at ¶ 32, PageID.22.

Fedorova alleged additional events which occurred more than one year later:

89.    On January 4, 2022, Fedorova called "PennyMac" and the operator was directed her to "Efren Saldivar" - who was only the one person with whom Fedorova was allowed to speak.  "Saldivar" started pushing Fedorova to sign a Modification with PennyMac.  Fedorova requested a Modification package, which came from FiServ, as usual.

90. This package contained [sic] unsigned clearly fraudulent "Modification" from unknown Creditor; and flagrantly fake "VA Partial Claim" dressed as "Michigan Mortgage" under which Fedorova suppose to [sic] make payments to BSI Financial Services whose payment address was in the same post office in Dallas TX where Exela collected her money sent to "Caliber" and "PennyMac", just a different P.O. Box 679002.

*Id*. at PageID.38.

On August 12, 2022, Fedorova found alternative financing and offered a full payment of the loan.  *Id*.   At that time,

[Defendant] FiServ sent Fedorova unsigned 'Payoff Statement' on PennyMac's letterhead which lacked any references to her alleged creditor; and demanded payments to FiServ's 'Cash Management' or Exela Technologies, Inc. or to an unverified account with JP Morgan Chase who suddenly replaced Bank of America as alleged 'banking institution' for undisclosed to Fedorova parties.

*Id*. Fedorova tried to obtain "a legitimate payoff statement from her alleged 'Creditor' and offered to deliver payments personally to an employee "who can provide her proof of ownership of her alleged 'obligation' [if any] and proof of agency for PennyMac." *Id*.

95.    On July 28, 2022 Potestivo &Associates' lawyer Haack drafted and filed a flagrantly forged Affidavit of Correction Legal description of Fedorova's alleged "mortgage" purportedly from "PennyMac"'s employee Lizet Rodrigues in Texas, who failed to provide any contact information.  It is unclear in which capacity and under whose authority lawyer Haack drafted this Affidavit for "PennyMac" and received it back - while most likely this Affidavit was prepared by Foley's Black Knight as all other documents.  This Affidavit was recorded on July 28, 2022 as document 2022-08107 and must be removed as fraudulent and void.

*Id*. at PageID.39.

On August 11, 2022 Fedorova informed "PennyMac" and Servicer FiServ, Inc. that she found an alternative source of financing from a private Creditor who want to lend her money to pay alleged "debt" in full and requested a Total Payoff Statement, signed by her current alleged Creditor and its responsible employee.

*Id*. at PageID.39.

"On August 16, 2022 Fiserv [as usual] sent Fedorova flagrantly void, unsigned 'Payoff Statement' which lacked any references to Fedorova's alleged 'Creditor' . . . [and]  any references to PennyMac or Fedorova and her property." *Id*. at PageID.39-40.

101.    On October 10, 2022 Fedorova received letters from local bankruptcy lawyers who informed her that here [sic] is a foreclosure sale of her property scheduled for November 10, 2022 by Potestivo & Associates, P.C.  Fedorova contacted Potestivo's lawyers Haack, Potesivos [sic] and Moore and demanded validation of this "foreclosure" which does not appear on any official documents or sources.

*Id*. at PageID.40-41.  Fedorova identified the "pending foreclosure sale of her property scheduled for November 10, 2022 by 'Assignee' PennyMac and Potestivo and Associates, PC[.]"  *Id*. at PageID.9.

Fedorova filed the present lawsuit on October 24, 2022.  *Id*. at PageID.1.  At that time, Fedorova sought a temporary restraining order, preliminary injunction, and permanent injunction to prevent the foreclosure of her home (the Hastings property) (ECF No. 2).  The Court denied the motion.  *See* Order (ECF No. 11).

### 3.    Documents related to the mortgage

Fedorova's allegations seek to establish that PennyMac: does not service her debt (is a "pretend" servicer); does not own her debt; does not own her mortgage; recorded an invalid assignment of mortgage; rents its name for a fee to be used on letterhead by the real servicers; and had no authority to commence the foreclosure on the Hastings property.  In evaluating PennyMac's motion to dismiss, the Court considers the documents related to Fedorova's mortgage, all of which are central to her requested relief that "Fedorova's contract with pretender Lender Perl Mortgage, Inc." be declared null and void *ab initio* because Perl was not a lender; and, that her mortgage to Perl and the assignment of mortgage to PennyMac "be set aside and ordered expunged at the Barry County Recorders, Office[.]"  *Id*. at PageID.116-117.  *See Bassett*, 528 F.3d at 430 (the Court may consider any exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to the defendant's motion to dismiss); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

On July 29, 2016, Fedorova signed a mortgage to secure a promissory note in the amount of $135,000.00.  *See* Mortgage (document # 2016-008879) (ECF No. 82-2, PageID.689-

90, 700); Promissory Note (ECF No. 1-6, PageID.134-139).  The promissory note identified

Fedorova as the borrower and Perl Mortgage Inc. as the lender.  Promissory Note at PageID.134,

136.  The promissory note was in the principal amount of $135,000.00, with interest at the rate of

3.500%, monthly payments of $606.21due on the first day of the month beginning on September

1, 2016, with a maturity date of August 1, 2046.  *Id*. at PageID.134.  The promissory note included

two attachments: an "Allonge to Promissory Note" dated July 29, 2016, in which the Lender, Perl

Mortgage Inc., endorsed the note to former defendant Caliber; and an "Allonge to the Note" dated

July 29, 2016, signed by a representative of Caliber.  *See* Attachments (ECF No. 1-6, PageID.138-

139).[4]  While Fedorova alleged in her complaint that the $135,000.00 debt is imaginary (Compl.

at ¶ 81, PageID.35), those conclusory allegations contradict the explicit terms of the promissory

note which is part of her complaint.  *See* Fed. R. Civ. P. 10(c); Promissory Notice (ECF No. 1-6).

The mortgage identified: the "Borrower" and mortgagor under the security

document as Elana A. Fedorova; the "Lender" as Perl Mortgage Inc.; and the "Note" as a

promissory note signed by the Borrower, which states that the Borrower owes the Lender

$135,000.00 plus interest to be paid in full by no later than August 1, 2046.  Mortgage at

PageID.689-690.  In the mortgage, Perl named MERS (a separate corporation) as a nominee for

Perl and Perl's successors and assigns, identifying MERS as "the mortgagee under this Security

Instrument".  Mortgage at PageID.689.  Finally, Fedorova, as the borrower and mortgagor stated

that she "does hereby mortgage, warrant, grant and convey to MERS (solely as nominee for Lender

and the Lender's successors and assigns) and to the successors and assigns of MERS, with power

---

[4] "An 'allonge' is '[a] piece of paper annexed to a bill of exchange or promissory note, on which to write endorsements for which there is no room on the instrument itself.' Black's Law Dictionary (4th ed)."  *Brown Bark, II, LP v. Bay Area Floorcovering & Design, Inc.*, No. 296660, 2011 WL 2140368 at *1 (Mich. App. May 31, 2011).

of sale, the following described property located in the County of Barry: [5757 Saggio Road, Hastings, Michigan]". *Id*. at PageID.691.[5]

In a "Notice of Servicing Transfer" dated July 29, 2016, Perl advised Fedorova: that Perl "is now collecting your payments"; that Perl "will stop accepting payments received from you after August 31, 2016"; that Caliber "will collect your payments going forward"; that "[y]our new servicer will start accepting payments received from you on August 31, 2016"; and directing Fedorova to "Send all payments due on or after August 31, 2016 to Caliber Home Loans, Inc." *See* Notice (ECF No. 82-3, PageID.706) (emphasis omitted).  The Notice provided Fedorova with contact information for both Perl and Caliber. *Id*.  Notably, Fedorova signed the Notice, certifying that she received a copy of it on July 29, 2016.  *Id*.

Almost three years later, in a letter dated May 10, 2019, PennyMac advised Fedorova that "servicing of your mortgage loan has transferred from Caliber Home Loans, Inc. to PennyMac Loan Services, LLC ("PennyMac"), effective May 2, 2019."  Letter (May 10, 2019) (ECF No. 82-4, PageID.708).  The letter provided Fedorova with contact information for both Caliber and PennyMac.  *Id*. at PageID.710.  PennyMac also provided Fedorova with a Debt Validation Notice, advising her that "[u]nder the Fair Debt Collection Practices Act ("FDCPA") and certain state laws, PennyMac Loan Services, LLC, as the servicer of your loan, is considered a debt collector," that "[a]s of the date of this letter, you owe $126,995.88" and that "[t]he name of the creditor to whom the debt is owed is PENNYMAC LOAN SERVICES, LLC."  *Id*. at PageID.712.

---

[5] With respect to MERS' status as the mortgagee, "Michigan courts have upheld the validity of MERS mortgages, most recently in *Residential Funding Co. v. Saurman*, 490 Mich. 909, 805 N.W.2d 183 (2011)."  *See Yuille v. American Home Mortgage Services, Inc.*, 483 Fed. Appx. 132, 135-36 (6th Cir. 2012).

11

PennyMac also sent Fedorova a "Notification of Assignment, Sale or Transfer of Your Mortgage Loan" dated May 10, 2019, which stated that, "The purpose of this notice is to inform you that your mortgage loan referenced above was sold to PENNYMAC LOAN SERVICES, LLC ('Creditor') on May 9 2019."  Notice (ECF No. 82-4, PageID.716).  The Notification included the address and telephone number for PennyMac and advised her that PennyMac was also the servicer of the loan.  *Id.*

On October 31, 2019, PennyMac issued a Notice of Default and Intent to Accelerate (ECF No. 1-22, PageID.178).  The Notice included a formal demand to pay $1,615.18 and stated:

> If the default, together with the additional payments that subsequently become due, is not cured by 12/05/2019, the sums secured by the Security Instrument may be accelerated, and PennyMac may involve any remedies provided for in the Notice and Security Instrument, including but not limited to the foreclosure sale of the property.

*Id.* at PageID.179.

On May 30, 2020, former defendant MERS, "AS MORTGAGEE, AS NOMINEE FOR PERL MORTGAGE, INC., ITS SUCCESSOR AND ASSIGNS, (ASSIGNOR)" conveyed and assigned Fedorova's Mortgage "with all interest secured thereby, all liens, and any rights due or to become due thereon to PENNYMAC LOAN SERVICES, LLC. . . ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE)."  Assignment of Mortgage (ECF No. 82-5, PageID.719).

### 4.    Fedorova's claims against PennyMac

In her first claim, Fedorova alleged that PennyMac and other defendants committed fraud.  Her claims include: that PennyMac pretended to be a new servicer of the loan (¶ 127); that PennyMac misrepresented ownership of the loan in May 2019 (¶ 132); and that PennyMac engaged in a forged assignment of the mortgage on May 31, 2020 (¶ 133).  Compl. at PageID.48-50.

In her fifth claim, Fedorova alleged that PennyMac violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq*. *Id*. at PageID.68-70.

In her sixth claim, Fedorova alleged that PennyMac violated the Real Estate Settlement Practices Act ("RESPA"), 12 U.S.C. § 2601, *et seq*. *Id*. at PageID.70-71.

In her seventh claim Fedorova alleged that PennyMac violated the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1962(c). *Id*. at PageID.71-74.

In her eighth claim, Fedorova alleged that "Master Servicers, Sub Serviviicers [sic] and Pretender Services [sic]" engaged in trespass and invasion of privacy. *Id*. at PageID.76-79.

In her ninth claim, Fedorova alleged that PennyMac engaged in slander of title under Michigan law. *Id*. at PageID.79-80.

Finally, in her 27th claim, Fedorova alleged that PennyMac should be a defendant in a Michigan quiet title action brought pursuant to M.C.L. § 600.2932. *Id*. at PageID.115-116.

### D.    Discussion

### 1.    Federal Fraud Claim

In Fedorova's "FIRST CLAIM FOR RELIEF: FRAUD, INLCUIDNG [sic] FRAUD BY INDUCEMENT; FRAUD IN THE FACTUM; CONSPIRACY TO DEFRAUD INDIVIDUALLY AND AS A GROUP; **Against all parties except Recorders and Agencies**[.]" Compl. at PageID.43 (emphasis in original), Fedorova set forth allegations against a number of defendants including PennyMac.

Fedorova alleged that her fraud claim against PennyMac is based on "Federal fraud law" as defined in a criminal statute, 18 U.S.C. § 1001:

111. Federal fraud law is defined under 18 U.S.C. § 1001-as knowingly and intentionally doing any of the following: (1) Falsifying, concealing, or covering up by any trick, scheme, or device a material fact; (2) Making any materially false, fictitious, or fraudulent statement or representation; or (3) Making or using any

false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

*Id.*[6]

In this claim, Fedorova alleged that PennyMac is one of a group of "servicers" who committed fraud because

112. Said Defendants, individually and as a group, initiated a void, fraudulent transaction which was intentionally misrepresented to Fedorova as a "loan" with the party – Perl – who was not a lender and had no lending intent. Here was no meeting of minds that-so-ever. While Fedorova intended to get a loan, Perl's intention was to get fees for inducing Fedorova to sign documents; and her undisclosed parties wanted to sell securities backed by information about Fedorova's transaction where nobody loaned her any real money since the base securitization scheme was established and never retired.

Compl. at PageID.43.  Plaintiff continued:

116. In sum, Fedorova did not get what they [sic] applied for and the investment banks did not pay money to her or on her behalf because they wanted to loan money. They wanted to sell securities and they needed Fedorova to do it. This transaction was camouflaged by alleged involvement of Ginnie Mae as a Guarantor; and alleged "Title Insurance" - which added more realistic flavor to this fraud and not triggered any suspicions in Fedorova who only started to understand that she was royally defrauded after HUD finally responded her FOIA after two years of delays.

117. **Roles of "servicers" are played by former Countrywide Financial - now Caliber and PennyMac - who are perfectly aware that they are not multi-billion companies with "millions mortgages" [sic] under management, but thinly capitalized group of criminals** who at all times, since 1999 are paid for playing roles of major players, which is promoted by Wall Street Banks via all

---

[6] 18 U.S.C. § 1001 provides in pertinent part as follows:

"(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years."

media sources. **PennyMac does not buy any "default debt" or issue any "mortgage backed Securities" for a simple reason - they don't have money to buy; and nobody who sell it to them [sic]**.

118. The real Servicers - Black Knight, FiServ, Exela, CoreLogic, Covius, Franklin, Computershare - are hiding behind fake Servicers names on the letterheads mailed and collected from various P.O. Boxes and additional layers of various sub servicers each of whom perform certain tasks assigned to them by Foley's Black Knight via password to his secured platform.

Compl. at PageID.44-45 (emphasis added).

Fedorova's fraud claims arise from PennyMac's alleged action of pretending to be

a new servicer of her debt:

Fedorova would still be without any clue about the real nature of her transaction, if her alleged "loan" were not fraudulently transferred for the sixth time, now to alleged "default Debt Buyer" PennyMac who started to pretend to be a new Servicer.

*Id*. at PageID.48.  Fedorova alleged that "'PennyMac' lied relentlessly and contradicted with lies

coming from letters signed as 'Caliber''s [sic] employees." *Id*.  According to Fedorova,

129. **PennyMac's fantasies looked like they are written by a delusional schizophrenic.  First PennyMac claimed to be a "buyer" of Fedorova's alleged loan.  When Fedorova asked who was the Seller - PennyMac was not able to respond.   Next, PennyMac invented some non-existing "pooled security" (whatever it means) which is some undisclosed GinnieMae Trust (?), where BONY is a Trustee whom "owner" PennyMac acting as a Servicer gives Fedorova's payments to be distributed to Investors who is also PennyMac who on top of all is an Issuer of Ginnie Mae Mortgage Backed Securities (which supposed to be issued by independent Lenders, who, under the legend, was Perl in 2016)**.

*Id*. at PageID.49 (emphasis added).   Fedorova further alleged that, "GinnieMae denied any

knowledge about PennyMac's fantasies or any involvement in them." *Id*.

Fedorova cannot maintain a private civil claim against PennyMac for the alleged

violation of 18 U.S.C. § 1001.  Nor can Fedorova enforce this federal criminal statute against

PennyMac.  "[T]he general rule is that a private right of action is not maintainable under a criminal

statute." *American Postal Workers Union, AFL-CIO, Detroit Local v. Independent Postal System of America, Inc.*, 481 F.2d 90, 93 (6th Cir. 1973).  "Equally important is the firmly established principle that criminal statutes can only be enforced by the proper authorities of the United States Government and a private party has no right to enforce these sanctions."  *Id*. (internal quotation marks omitted).

"[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973).  In short,

> "There is no authority to allow a private citizen to institute a criminal action in a federal court; that power is vested exclusively in the executive branch." *See United States v. Nixon*, 418 U.S. 683, 693, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Williams v. Finnegan*, 2014 WL 2434590 at *2 (N.D. Ohio May 29, 2014). **Consequently, there exists no independent, private cause of action for the alleged violation of 18 U.S.C. § 1001**.

*Shoemake v. Mansfield City School District Board of Education*, 61 F. Supp. 3d 704, 711 (N.D. Ohio 2014) (emphasis added).  Accordingly, Fedorova's federal fraud claim against PennyMac should be dismissed.

### 2.    FDCPA

The gist of Fedorova's FDCPA claim is that, "[i]t is unlawful for a 'regulated person' to make an 'inaccurate, untrue, or deceptive statement or claim in a communication to collect a debt .' MC.L. § 445.252(e).71 and 15 U.S.C. § 1692-1692p." Compl. at ¶ 180, PageID.68. Fedorova's allegations against PennyMac are set forth as follows:

> 183.    Under the FDCPA, if a debt collector does any of the restricted activities listed below it is considered a FDCPA violation. It is a FDCPA violation to make misleading or false representation through a phone call, email, voice mail or letter. Misleading information or FDCPA violations include: Mislead the consumer with the ownership, amount or the status of the debt; making misleading statements to make an individual believe the collection agency is affiliated with the state of federal government and the debt collection documents are official government documents.

184. All elements are present. **Mr. Foley's Black Knight and Mr. Bisignano's FiServ, acting under PennyMac and Caliber names, are actively gaslighting [sic] Fedorova with fraudulent demands, purportedly under authority of GinnieMae, to coerce Fedorova to make payments and sign promises to pay PennyMac, who is merely renting their names to this illegal scheme.**

Compl. at PageID.68-69 (emphasis added).

The Fair Debt Collection Practices Act prohibits a debt collector from the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692k of the statute allows the consumer to recover statutory or actual damages for violations of the Act. In order to establish a claim under § 1692e: (1) plaintiff must be a "consumer" as defined by the Act; (2) the "debt" must arises out of transactions which are "primarily for personal, family or household purposes;" (3) defendant must be a "debt collector" as defined by the Act; and (4) defendant must have violated § 1692e's prohibitions.

*Wallace v. Washington Mutual Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012).

In her FDCPA claim, Fedorova alleged that PennyMac rented its name to other entities who in turn coerced Fedorova to make payments to PennyMac. Regardless of how Fedorova characterizes PennyMac's involvement, she cannot state a claim against PennyMac for violating the FDCPA because PennyMac was not a debt collector; it was collecting its own debt. *See* Notification (ECF No. 82-4, PageID.716) (advising Fedorova that her mortgage loan was sold to PennyMac on May 9, 2019). The FDCPA contains an exemption for a creditor who is collecting a debt which it owns, *i.e.*, "any person collecting or attempting to collect any debt owed or due or asserted to be owed . . . to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person . . ." 15 U.S.C. § 1692a(6)(F). There is no allegation that Fedorova was in default of the loan at the time it was sold to PennyMac. *See Kevelighan v. Trott & Trott, P.C.*, 771 F. Supp. 2d 763, 773 (E.D. Mich. 2010) (the provision exempts mortgage servicing companies from the FDCPA so long as the borrower was not in default at the time the servicer acquired its interest in the loans.); *Barksdale v. Green Tree Servicing LLC*, No. 14-CV-

10403, 2014 WL 7205009 at *3 (E.D. Mich. Dec. 17, 2014) ("Where the debt was assigned for servicing before default of the loan, the assignee is exempt from the FDCPA because the assignee becomes a creditor and is collecting its own debt.") (brackets and quotation marks omitted). Accordingly, Fedorova's FDCPA claim against PennyMac should be dismissed.

### 3.    RESPA claim

Fedorova alleged that PennyMac violated RESPA by engaging in fraud, deceit, or a material misrepresentation in connection with a loan servicing transaction.  In support of her claim, Fedorova alleged as follows:

> 190.    It is unlawful for a "licensee" to engage in fraud, deceit, or material misrepresentation in connection with any loan servicing transaction with respect to a residential mortgage loan where the mortgaged property is located within the State of Michigan. M.C.L. § 445.1672(b). The same provisions are in RESPA.  All Defendants, acting individually and as a group, violated laws and materially misrepresented the ownership and status of the Loan in communications to Plaintiff - while Defendants knew that none of them own the account receivable for Fedorova's alleged loan; or the identity of Fedorova's alleged Creditor.
>
> **192.    PennyMac's responses are always coming from automated FINTECH platforms, mostly from FiServ and Black Knight who act under glimpse of "PennyMac" whose employees do not prepare these responses or participate in any servicing activities attributed to PennyMac.**
>
> 193. Defendants unlawful conduct is in violation of RESPA, 12 U.S.C. § 2605 and constitute violations of the MBLSLA [Mortgage Brokers, Lenders and Servicers Licensing Act] under M.C.L. § 445.1672(a). Defendans [sic] refusals to provide essential disclosures are violations of RESPA which caused Plaintiff to suffer actual harms and damages, including deprivation of information to which she is legally entitled, confusion regarding Plaintiff [sic] legal rights, economic and noneconomic damages in the form of substantial mental stress, emotional distress and mental anguish.

Compl. at PageID.70-71 (emphasis added).

Fedorova's conclusory allegations fail to state a plausible claim for relief under RESPA.  Fedorova does not identify the specific provision of 12 U.S.C. § 2605 ("Servicing of mortgage loans and administration of escrow accounts") which PennyMac allegedly violated

because its "responses are always coming from automated FINTECH platforms." Accordingly, Fedorova's RESPA claim against PennyMac should be dismissed.

### 4.    RICO claim

In her RICO claim, Fedorova alleged that a number of defendants, including PennyMac, violated 18 U.S.C. § 1962(c).  Compl. at ¶ 195, PageID.71.

> Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."  Put differently, a violation of this statute requires: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.I. v. Imrex Co.*, 473 U.S. 479, 496 (1985).  Plaintiff must allege each of these elements to state a claim.  *Heinrich v. Waiting Angels Adoption Services, Inc.*, 668 F.3d 393, 404 (6th Cir. 2012). "Racketeering activity consists of acts which are indictable under a number of federal statutes listed in 18 U.S.C. § 1961(1)(B)," including, among other things, mail fraud under 18 U.S.C. § 1341. *Id*. To show a pattern of racketeering activity, a plaintiff must plead, *inter alia*, at least two predicate acts occurring within a ten-year period. 18 U.S.C. § 1961(5).

*Kim v. City of Ionia*, No. 1:20-cv-843, 2021 WL 5053967 at *9 (W.D. Mich. Jan. 8, 2021).

Fedorova's RICO allegations against PennyMac appear in ¶¶ 196 and 199:

> 196. **All Fedorova's Defendants are engaged in a wide-spread sophisticated pattern racketeering activities. All their income derives from racket and collection of imaginary "debt" either directly via chain of sham conduits [Foley's Fidelity/Black Knight/ServiceLink; Biginano's FiServ; Cogburn's Exela who use pretender Servicers's [sic] names like Caliber and PennyMac.] or indirectly.** Although advertised as financial technology companies, Defendants, in a very real sense, are prime players in the creation [sic] maintenance, and promotion of securitization infrastructures and the creation, maintenance, and prime players in fake collections and foreclosure infrastructure that plagues not only homeowners but virtually everyone else who is a party to what appears as an installment debt. All Defendants use mail in their criminal activities to extort money from homeowners as additional revenues. Black Knight and FiServ are also all involved in the creation and use of false fabricated documents that refer to nonexistent transactions for the sole purpose of achieving a remedy to which nobody is entitled to receive - foreclosure since Black Knight and FiServ are the central command of all illegal foreclosures based on false claims of securitization of debt. . . .

19

199.    Section 1962(c) is the most common RICO offense subsection, and referred to as a "substantive RICO violation."  To prove a section 1962(c) violation, the civil RICO plaintiff must prove that a person employed by or associated with an enterprise conducted or participated in the conduct of the affairs of the enterprise *through* a PORA [presumably a "pattern of racketeering activity"]. The enterprise and PORA elements have been described above. All elements met. **Defendants send Fedorova "billing statements" on behalf of sham conduits (PennyMac, Caliber) who collect royalties for use of their names and direct Fedorova to send her money to P.O. Boxes where her payments are collected and processed by Exela via designated Bank's account where pretender Servicers do not have access**.  Access to this account have Foley's or Biginano's employees (George Fazio, for example) who launder Fedorova's money into another account by logging in Foley's secured website and making transfers - while these employees most likely do not even know who issue them directions. This is a classic, text-book example mafia-style racket with use of mail and wire transfers to perpetrate this crime.

PageID.71-73 (emphasis added).

Fedorova's RICO claim is based on alleged mail and wire fraud.  "Mail fraud consists of (1) a scheme to defraud, and (2) use of the mails in furtherance of the scheme." *Heinrich*, 668 F.3d at 404 (quotation marks omitted).  "The elements of wire fraud are essentially the same except that one must use the wires in furtherance of the scheme to defraud." *Id*.

When pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.

*Id*. (quotation marks omitted).  To allege a valid RICO claim, a plaintiff must show not only that the predicate act was a "but for" cause of the plaintiff's injuries, but also that it was a proximate cause.  *Id*. at 405, citing *Holmes v. Security Investor Protection Corporation*, 503 U.S. 258, 268 (1992).  The plaintiff must also show "some direct relation between the injury asserted and the injurious conduct alleged." *Id*. quoting *Holmes*, 503 U.S. at 268.

Here, Fedorova has failed to allege facts to support a plausible RICO claim against PennyMac.  In this regard, Fedorova failed to allege the specific fraudulent actions which

PennyMac took against her, the dates when these actions occurred, the places where these actions occurred, the substance of these actions, how these actions established the elements of a RICO claim, and how these actions led to her alleged injuries.  Fedorova's conclusory RICO claim against PennyMac is essentially "an unadorned, the - defendant - unlawfully - harmed - me accusation" which is insufficient to state a claim for relief.  *See Iqbal*, 556 U.S. at 678. Accordingly, Fedorova's RICO claim against PennyMac should be dismissed.

### 5.      Trespass and Invasion of Privacy

PennyMac seeks to dismiss Fedorova's claims that it, along with other defendants, committed trespass and invaded her privacy. *See* Compl. at PageID.76-79.  With respect to these state law claims, Fedorova's complaint is an example of "group pleading", a litigation tactic which raises claims against numerous defendants without regard to a defendant's particular actions.  As this Court observed in *Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125 (W.D. Mich. 2019)

> Courser's First Amended Complaint—steeped in conspiracy allegations—
> is a prime example of a tactic known as group pleading. As one court has explained,
> "[a] complaint which lumps all defendants together and does not sufficiently allege
> who did what to whom, fails to state a claim for relief because it does not provide
> fair notice of the grounds for the claims made against a particular defendant."
> *Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831 (D. Minn. 2012).

*Courser*, 404 F. Supp. 3d at 1140.

Here, Fedorova did not allege any particular action taken by PennyMac which would support claims for trespass or invasion of privacy.  *See* Compl. at PageID.76-79; Fed. R. Civ. P. 8(a)(2) ("[a] pleading that states a claim for relief must contain: . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]").  Accordingly, Fedorova's trespass and invasion of privacy claims against PennyMac should be dismissed.

### 6.    Slander of Title

Fedorova alleged that PennyMac slandered her title to the Hastings property by being a party to forged mortgage assignment. Compl. at PageID.79-80.  In a related action to quiet title, Fedorova seeks "an order establishing clear title in her name."  *Id*. at PageID.115-116.

With respect to slander of title, one federal court explained:

> Slander of title claims in Michigan "have both a common-law and statutory basis." *B & B Inv. Group v. Gitler*, 229 Mich. App. 1, 8, 581 N.W.2d 17, 20 (1998).  A plaintiff must prove the same three elements for both a common-law slander of title claim and a claim under Michigan Compiled Laws § 565.109: "falsity, malice, and special damages, i.e., that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages." *Id*. at 9, 581 N.W.2d 17.  "In Michigan, special damages have been recognized to include litigation costs, impairment of vendibility, and loss of rent or interest." *Ibid*. (internal citations omitted).

*Keyes v. Deutsche Bank National Trust Company*, 921 F. Supp. 2d 749, 762 (E.D. Mich. 2013).

Here, Fedorova's slander of title claim against PennyMac alleged in pertinent part:

> 222.    Defendants [sic] Perl knew that they are not the lenders and their alleged "loan" had no consideration.  Defendants [sic] MERS knew that they are not mortgagees of assignees for Perl.  Yet, Perl and MERS allowed Foley's Enterprise to prepare and file fraudulent "Mortgage" [sic] which had no underlying legal basis other than defraud [sic] Fedorova and expose her to illegal collection and racket by Foley, Biginano, Cogburn and their subsidiaries who acted with actual malice under directions from one of undisclosed [sic] to Fedorova investment banks [sic]. **Defendants [sic] NTC knew that their "Assignment of Mortgage" by Perl/MERS to PennyMac is forged, and described a transaction which never happened in the real life; and cannot happen in the real life.  Defendants [sic] NTC knew that this fraudulent assignment prepared without any consideration of legal authority will be used to defraud Fedorova; Courts; Recorder's Offices and other people who may rely on information in this assignment which was legally void ab initio.**  Yet, NTC acted with actual malice and intent to damage Fedorova's Title; cause her damages and enable illegal collection and theft of her property by Foley and Biginano's enterprises who issued instructions to NTC. . . .

> 224. As to malice, Michigan courts have concluded that the second element of a slander of title claim can be proven with evidence that the defendant either knew that the statement (lien, affidavit, mortgage, or other recordable instrument) was false when it was recorded. In other words, if a defendant records a mortgage ( or

other statement) against plaintiff's property, despite knowing that there is no underlying loan or other agreement with the property owner, malice may be established. All elements are present in Fedorova's situation.

*Id*. at PageID.79-80. (emphasis added).   Here, Fedorova alleged that "defendants" committed slander of title when they fraudulently recorded the mortgage assignment against her property.  *Id*. at PageID.80.

Fedorova has not alleged a plausible claim for slander of title against PennyMac. Fedorova's claim is based upon conclusory allegations: that there were no lenders or loans; that MERS had no authority to act as a mortgagee; that Fedorova's mortgage was part of a criminal enterprise to defraud her; and, that NTC forged the document which assigned the mortgage to PennyMac.

Next, the crux of Fedorova's slander of title claim is that "defendants" fraudulently recorded a forged mortgage assignment to PennyMac. However, in her response to PennyMac's motion, Fedorova withdraws her claim that the NTC forged the assignment, making the convoluted statement:

Fedorova does not challenge the Assignment of Mortgage.  Fedorova challenge [sic] the existence of this transaction in the real life between named parties, which she has standing to do.

Response (ECF No. 133, PageID.1042).

Finally, Fedorova has failed to allege facts that PennyMac acted with "malice", which is the "crucial element" in a slander of title claim.  *See Gehrke v. Janowitz*, 55 Mich. App. 643, 648, 223 N.W.2d 107 (1974).   "A slander of title claimant must show some act of express malice, which 'implies a desire or intention to injure.'" *Wells Fargo Bank v. Country Place Condominium Association*, 304 Mich. App. 582, 596, 848 N.W.2d 425 (2014) (quoting *Glieberman v. Fine*, 248 Mich. 8, 12; 226 N.W. 669 (1929)).  "Malice may not be inferred merely

from the filing of an invalid lien; the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury." *Stanton v. Dachille*, 186 Mich. App. 247, 262; 463 N.W.2d 479 (1990).  Here, Fedorova engaged in another example of group pleading, alleging that "[d]efendants knew there was no legal basis for the mortgage and the Assignment, which in turn established the element of malice."  *Id.* at PageID.80.  Fedorova has alleged no facts to establish that PennyMac knew the mortgage "had no legal basis", that the mortgage assignment to PennyMac was invalid,[7] that PennyMac recorded the assignment,[8] or that PennyMac performed an action with the intent to cause Fedorova injury.  For all of these reasons, Fedorova's slander of title claim against PennyMac should be dismissed.

### 7.    Quiet Title

In her 27th claim, Fedorova alleged that PennyMac should be a defendant in a Michigan quiet title action brought pursuant to M.C.L. § 600.2932, which provides that:

> **Interest of plaintiff.** Any person, whether he is in possession of the land in question or not, who claims any right in, title to, equitable title to, interest in, or right to possession of land, may bring an action in the circuit courts against any other person who claims or might claim any interest inconsistent with the interest claimed by the plaintiff, whether the defendant is in possession of the land or not.

M.C.L. § 600.2932(1).  "This statutory language requires a plaintiff seeking to quiet title to establish a substantive right in the property superior to others claiming an inconsistent interest." *Berry v. Main Street Bank*, 977 F. Supp. 2d 766, 776 (E.D. Mich. 2013) (citing *Beach v. Township of Lima*, 489 Mich. 99, 110, 802 N.W.2d 1 (2011)).  "Plaintiff bears the initial burden of proof and

---

[7] As discussed, the documentation which relates to Fedorova's mortgage, and which is considered by this Court on the motion to dismiss, indicates that mortgage assignment is facially valid.

[8] The Court notes that the assignment from MERS to PennyMac was prepared by "Dave Rose/NTC" with instructions to return the recorded assignment to PennyMac.  *See* Assignment (ECF No. 82-5).

must establish a *prima facie* case of title" which "requires a description of the chain of title through which ownership is claimed." *Berry*, 977 F. Supp.2d at 776.

> To state a claim for quiet title under Michigan law, a plaintiff must show "(a) the interest the plaintiff claims in the premises; (b) the interest the defendant claims in the premises; and (c) the facts establishing the superiority of the plaintiff's claim." MCR § 3.411(B)(2) (providing elements for action to quiet title under Mich. Comp. Laws § 600.2932); *see also Khadher v. PNC Bank, N.A.*, 577 Fed.Appx. 470, 477 (6th Cir. 2014).

*Mandingo v. PNC Bank National Association*, No. 2:15-CV-12079, 2017 WL 914026 at *3 (E.D. Mich. March 8, 2017).

> Fedorova set out a one-paragraph claim to quiet title:

> 332. Quiet title actions are equitable actions decided by judges in Michigan. Plaintiff Fedorova has undisputable evidence to establish a superior interest above all other parties claiming an interest in the her real property, specially Pretender "Servicer" PennyMac who has absolutely no relationship to her property; and alleged "Mortgage [sic] MERS, who whose name was used on fraudulently [sic]. Fedorova pleads this Court for an order establishing clear title in her name.

 Compl. at PageID.116.  Fedorova's conclusory allegations fail to establish the elements of a quiet title action.  Accordingly, Fedorova's quiet title claim against PennyMac should be dismissed.

### 8.     Dismissal of state law claims pursuant to 28 U.S.C. § 1367

In the alternative, if the Court accepts the recommendations to dismiss Fedorova's federal claims against PennyMac, then her state law claims for trespass, invasion of privacy, slander of title, and to quiet title should be dismissed.  The Court exercised its supplemental jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367, presumably because the claims were intimately related to the alleged federal violations.  *See* 28 U.S.C. § 1367(a) ("the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy").  Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise

supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction."  Thus, once a court has dismissed a plaintiff's federal claims, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367.  *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir.1998).  As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims."  *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996).  As discussed, the undersigned has concluded that all of Fedorova's federal claims against defendant PennyMac should be dismissed.  If the Court agrees with this conclusion, then there is no reason to retain supplemental jurisdiction over her state law claims against PennyMac for trespass, invasion of privacy, slander of title or to quiet title, and the Court should dismiss these state law claims pursuant to 28 U.S.C. § 1367(c)(3).

## III.    RECOMMENDATION

Accordingly, I respectfully recommend that defendant PennyMac's motion to dismiss (ECF No. 82) be **GRANTED** and that it be **DISMISSED** from this action.

Entered: August 10, 2023                              /s/ Ray Kent
                                                      Ray Kent
                                                      U.S. Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).