UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELENA FEDOROVA,

              Plaintiff,            Case No. 1:22-cv-991

v.                           Hon. Hala Y. Jarbou

WILLIAM P. FOLEY, II, *et al.*,

              Defendants.

_____/

**REPORT AND RECOMMENDATION**

      *Pro se* plaintiff, Elena Fedorova ("Fedorova") filed the present lawsuit related to the mortgage of property on Hastings, Michigan.  This matter is now before the Court on defendant Bank of New York Mellon's combined motion to dismiss or in the alternative for summary judgment (ECF No. 75) and Fedorova's motion to strike the Kathryn Corbett Affidavit (ECF No. 124).

      In its filings, defendant Bank of New York Mellon refers to itself as "BNY Mellon" and notes that while Fedorova incorrectly named another entity ("The Bank of New York Mellon Corporation") as the defendant, it has responded to the complaint.[1]  For her part, Fedorova's complaint refers to this defendant by the acronym "BONY".  For purposes of this report, the Court will refer to this defendant as "BONY".

---

[1] BNY Mellon included the following footnote in its supporting brief:

"For purposes of its Motion to Dismiss only, BNY Mellon assumes the truth of the facts set forth in the Complaint. Plaintiff has incorrectly named "The Bank of New York Mellon Corporation"—a holding company—as a defendant in this action. BNY Mellon reserves the right to move to dismiss the claims against The Bank of New York Mellon Corporation on the additional ground that it is not a proper defendant."

BNY Mellon Brief (ECF No. 76, PageID.637).

## I.    Fedorova's complaint

The Court previously set out the factual background for Fedorova's lawsuit:

Fedorova applied for a $135,000 loan with Perl Mortgage, Inc. ("Perl") on
June 15, 2016, in order to purchase a home located at 5757 Saggio Road in
Hastings, Michigan.  (Fedorova Loan Application, ECF No. 1-2, PageID.123.)
Fedorova signed a promissory note on July 29, 2016.  (Note, ECF No. 1-6,
PageID.134.)  The note states: "I understand that the Lender may transfer this Note.
The Lender or anyone who takes this Note by transfer and who is entitled to receive
payments under this Note is called the 'Note Holder.'"  (*Id.*)

Perl transferred the servicing rights on the loan to Caliber Home Loans, Inc.
("Caliber"), who became the new servicer.  Perl notified Fedorova of the transfer.
(Notice of Assignment, ECF No. 1-11, PageID.146.)  Later in 2019, Caliber also
told Fedorova that it had become the new servicer of the loan.  (5/3/2019 Letter
from Caliber to Fedorova, ECF No. 1-7, PageID.140.)  In the same letter, Caliber
also informed Fedorova that PennyMac Loan Services, LLC ("PennyMac") became
the servicer of the loan on or around May 2, 2019.  (*Id.*)  PennyMac subsequently
notified Fedorova that it was now the owner and servicer of the loan.  (5/10/2019
Letter from PennyMac to Fedorova, ECF No. 1-8, PageID.142-143.)

On October 31, 2019, PennyMac informed Fedorova that her loan was in
default because she failed to make her monthly payments.  (Notice of Default, ECF
No. 1-22, PageID.178.)  Finally, on October 8, 2022, Potestivo & Associates, P.C.
provided Fedorova with a notice of foreclosure on behalf of PennyMac.  (Notice of
Foreclosure, ECF No. 1-33, PageID.253.)   As of that date, Fedorova owed
$142,308.50 on the loan.  (*Id.*)

Opinion (ECF No. 196, PageID.1409-1410).  As discussed, *infra*, Fedorova's claims against

BONY involve alleged actions that occurred after she signed the promissory note and before the

notice of foreclosure.

## II.    BONY's motion dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

### A.    Legal Standard

Defendant BONY has moved to dismiss the complaint pursuant to Fed. R. Civ. P.

12(b)(6) for failure to state a claim upon which relief can be granted.  A complaint may be

dismissed for failure to state a claim if it fails to give the defendants a fair notice of the claim and

the grounds upon which it rests. *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted).

In making this determination, the complaint must be construed in the light most favorable to the plaintiff, and its well-pleaded facts must be accepted as true. *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). While *pro se* pleadings are to be liberally construed, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), "this court is not required to conjure up unpled allegations." *Dietz v. Sanders*, 100 Fed. Appx. 334, 338 (6th Cir. 2004). Thus, "an unadorned, the - defendant - unlawfully - harmed - me accusation" is insufficient to state a claim for relief. *See Iqbal*, 556 U.S. at 678. Finally, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

### B.    The alleged criminal scheme

Fedorova's 119-page complaint is a collection of allegations against over 100 defendants spread across the country. The complaint appears to consist of 28 counts, many of which contain multiple claims against multiple defendants.[2] Fedorova's complaint appears based

---

[2] Fedorova appears to have alleged 28 claims or counts: (1) First Claim for Fraud and Conspiracy to defraud (PageID.43-55, 61); (2) Unnumbered "Claims against defendants Mark W. Sheldon; Detroit Legal News Publishing, LLC; Bradley L. Thompson II,; Anna Graham under FDCPA; RESPA; RICO; Common Fraud; Conspiracy to Defraud; Accessories to Theft of Property over $100,000.00, individually and as a group" (PageID.56-61); (3) Second

on a theory that the American real estate mortgage system is a criminal scheme and that the defendants (including such diverse entities and governmental agencies as JP Morgan Chase, the American Land Title Association, Detroit Legal News Publishing, LLC, the United States Department of Justice, the Security and Exchange Commission, the Florida Office of Governor DeSantis Notary Section, the Illinois Attorney Registration and Disciplinary Committee [sic],  and the State Bar of California) are all part of that criminal scheme.

By way of background, Fedorova alleged that former defendant William P. Foley, II ("Foley") is "one of master minds [sic] and leaders behind this entire criminal scheme" having "created a sophisticated enterprise 'Foley's Enterprise' consisting from [sic] thousands [sic] empty shell corporations, most of which exist in name only (like 850+ ServiceLinks)."  Compl. at PageID.14.  Fedorova alleged among other things that,

> Foley's Enterprise under his leadership and guidance mercilessly gaslight Fedorova with letters, notices and demands on pretender Servicers letterheads to extort money as revenues of unknown to Fedorova Investment Bank [sic]. Foley's website under his guidance and directions issues instructions to unknown to Fedorova employees [sic] who divert her payments without crediting a cent to her principal or escrow.

---

Claim for Forgery (PageID.62-65); (4) Third Claim for Breach of Contract (PageID.65-66); (5) Fourth Claim for Bad Faith (PageID.67-68); (6) Fifth Claim for Violation of FDCPA (PageID.68-70); (7) Sixth Claim for Violations of RESPA (PageID.70-71); (8) Seventh Claim for Mail Fraud and Racket (PageID.71-74); (9) Claim for Violation of Truth in Lending Act (PageID.74-76); (10) Eighth Claim for Trespass and Invasion of Privacy (PageID.76-79); (11) Ninth Claim for Slander of Title (PageID.79-81); (12) Tenth Claim for Violation of FCRA (PageID.81-83); (13) "Claim for compensation under Federal Tort Claims Act" (PageID.83-86); (14) "Claim for declaratory and injunctive relief agaisnt [sic] all agencies including state bar associations and attorney generals offices" (PageID.86-88); (15) "Claim against Department of Justice ('DOJ') and demand to act" (PageID.88-91); (16) "Claim agaisnt [sic] the Senate Banking Committee, Housing and Urban Affairs Committee and demand to act" (PageID.91-93); (17) "Claim against CFPB and demand to act" (PageID.94-96); (18) "Claim agaisnt [sic] Michigan DIFS and demand to act" (PageID.96-99); (19) "Claim agaisnt [sic] Michigan Office of Attorney General and demand to act"  (PageID.99-100); (20) "Claim against Florida, Nevada, New York, Wisconsin, Georgia and California Attorney Generals and demand to act" (PageID.101-105); (21) "Claim against [sic] Florida Governor Desantis notary section and demand to act" (PageID.105); (22) "Claim against [sic] SEC and demand to act" (PageID.105-111); (23) "Claim against FTC and FDIC and demand to act" (PageID.111-113); (24) "Claim agaisnt [sic] CA Department of Business Oversignt [sic]; and demand to act" (PageID.113); (25) "Claim against Defendnats [sic] Bar Associations and demand to act" (PageID.113-115); (26) "Claim against Barry County Recorder" (PageID.115); (27) "Claim for quiet title under Michigan 600.2932 Quieting title" (PageID.115-116); and, (28) "Claim for damages under Federal Tort Claims Act. Against Defendants HUD/Ginnie Mae and SEC" (PageID.116).

*Id*.[3]  Plaintiff also alleged that former defendant Frank Bisigano ("Bisigano") "is a former CEO of JP Morgan Chase Bank who operates a sophisticated enterprise (Bisignano's Enterprise) in terms of receipt, collection, depositing, and disbursement of funds."  *Id*. at PageID.17.  "Biginano's [sic] Enterprise is printing and mailing Fedorova 'billing statements'; Notices; letters; 'Modifications'; 'Payoffs' and other fictitious documents on actor's Penny Mac letterheads."  *Id*.

### C.    The allegations against defendant BONY

Fedorova identified this defendant as follows:

**Bank of New York Mellon Corporation**, "BONY" Alleged Trustee for Ginnie Mae's "Pooled Security" (whatever it means) and an unidentified Trust who rents its name to various Stockbrokers [Investment Banks] mostly to use it as a fake "Plaintiff["] in illegal foreclosures.  BONY is citizen of New York.

*Id*. at PageID.19 (emphasis in original).

Fedorova first mentions BONY with respect to the closing of her mortgage and loan with Perl Mortgage Inc. ("Perl") on July 29, 2016:

62.    When Foley [acting as "Perl"] moved Mortgage and Note in two opposite directions on her closing day, it purportedly created "Trust", appointed BONY as Trustee; "pooled" here [sic] Fedorova's mortgage; converted it into Mortgage Backed Securities, obtained Ginnie Mae guarantees for these securities and sold these securities to investors, who is also Ginnie Mae. All in less than 24 hours.

Compl. at PageID.32.

On August 18, 2016 Fedorova received a letter from FINTECH sub-servicing company on Caliber letterhead, informing that Fedorova alleged "loan" was "transferred" to Caliber as a Servicer which implied that Fedorova's "loan" was sold to GinnieMae [sic].  It also implied that the Lender [impersonator Perl] allegedly "funded" a bundle of loans, (1) created some "Trust" where Perl "pooled" these "loans" (2) appointed BONY (who agreed to rent their name for a fee to defraud homeowners, and Fedorova) as Trustee for this Trust; and Caliber as a Servicer (3) covered these "loans" into "mortgage backed securities["] and (4) sold these "loans" or "securirties" [sic]  [not specified] to Investors Ginnie Mae.

---

[3] Fedorova's complaint uses the term "gaslight", a verb which means "To manipulate (a person) by psychological means into questioning his or her own sanity." *See Oxford English Dictionary*, https://www.oed.com .

*Id*. at ¶ 125, PageID.47-48.[4]

Fedorova alleged that defendant PennyMac provided an explanation in a "Welcome Letter" in which  PennyMac "started to pretend to be a new Servicer".  *Id*. at ¶ 128,  PageID.48. Fedorova's allegations connected BONY to PennyMac as follows:

> 129.    PennyMac's fantasies looked like they are written by a delusional schizophrenic. First PennyMac claimed to be a "buyer" of Fedorova's alleged loan. When Fedorova asked who was the Seller - PennyMac was not able to respond. Next, PennyMac invented some non-existing "pooled security" (whatever it means) which is some undisclosed GinnieMae Trust (?), where BONY is a Trustee whom "owner" PennyMac acting as a Servicer gives Fedorova's payments to be distributed to Investors who is also PennyMac who on top of all is an Issuer of Ginnie Mae Mortgage Backed Securities (which supposed to be issued by independent Lenders, who, under the legend, was Perl in 2016).

> 130.    BONY initially tried to support "PennyMac"s [sic] delusions, claiming some "transfer agent" capacity for unknown to Fedorova's parties, but later dropped off and left PennyMac (read: FiServ) to lie on its own, without BONY's collaborative support. . . .

> 132. PennyMac [read: FiServ and Black Knight] started to misrepresent its "ownership" to Fedorova in May 2019, and servicing activities trying in imply authority of GinnieMae [sic] and BONY as Trustee, which GinnieMae [sic] and BONY both denied.

*Id*. at PageID.49.

On December 11, 2019, BONY's employee former defendant Michael Casteele "contacted Fedorova and Informed her that BONY is a 'transfer agent' for GinnieMae [sic] where Fedorova's 'loan' is pooled." *Id*. at ¶ 69, PageID.33-34.

On May 31, 2020,

---

[4] The Court notes that Fedorova knew of the transfer to Caliber back in July 2016.  At the time she executed the mortgage and promissory note on July 29, 2016, Fedorova received a "Notice of Servicing Transfer" in which Perl advised Fedorova: that Perl "is now collecting your payments"; that Perl "will stop accepting payments received from you after August 31, 2016"; that Caliber "will collect your payments going forward"; that "[y]our new servicer will start accepting payments received from you on August 31, 2016"; and directing Fedorova to "Send all payments due on or after August 31, 2016 to Caliber Home Loans, Inc." *See* Notice (ECF No. 82-3, PageID.706) (emphasis omitted). The Notice provided Fedorova with contact information for both Perl and Caliber. *Id*. Fedorova signed the Notice, certifying that she received a copy of it on July 29, 2016. *Id*.

[S]omeone [Foley's Black Knight] hired NTC who prepared flagrantly fraudulent and forged "Assignment of Mortgage" where MERS (aka ICE) acting as Agent of Perl (over heads of GinnieMae [sic], BONY and the Trust) transferred Fedorovas [sic]  mortgage (without the Note) to PennyMac, for "good and valuable consideration".  First, based on facts and evidence stated above, this transaction cannot happen in the real life even hypothetically since Fedorova's alleged "loan" was allegedly "sold and resold" at least five times before; and Perl had no relationship to it from the origination.

*Id*. at ¶ 133, PageID.49-50.

## D.    Discussion

Fedorova's claims against BONY are set forth in her "FIRST CLAIM FOR RELIEF: FRAUD, INLCUIDNG [sic] FRAUD BY INDUCEMENT; FRAUD IN THE FACTUM; CONSPIRACY TO DEFRAUD INDIVIDUALLY AND AS A GROUP; **Against all parties except Recorders and Agencies**[.]"   Compl. at PageID.43 (emphasis in original), Fedorova set forth allegations against a number of defendants including BONY.

Fedorova alleged that her fraud claim against BONY is based on "Federal fraud law" as defined in a criminal statute, 18 U.S.C. § 1001:

111. Federal fraud law is defined under 18 U.S.C. § 1001-as knowingly and intentionally doing any of the following: (1) Falsifying, concealing, or covering up by any trick, scheme, or device a material fact; (2) Making any materially false, fictitious, or fraudulent statement or representation; or (3) Making or using any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry.

*Id*.[5]

---

[5] 18 U.S.C. § 1001 provides in pertinent part as follows:

"(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; (2) makes any materially false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

As discussed, Fedorova alleged that BONY is a trustee of a pooled mortgage-backed security and that her mortgage is one of the pooled mortgages.  In this claim, Fedorova alleged that BONY was part of a fraudulent scheme to misrepresent her transaction with Perl:

> 112. Said Defendants, individually and as a group, initiated a void, fraudulent transaction which was intentionally misrepresented to Fedorova as a "loan" with the party – Perl – who was not a lender and had no lending intent. Here was no meeting of minds that-so-ever. While Fedorova intended to get a loan, Perl's intention was to get fees for inducing Fedorova to sign documents; and her undisclosed parties wanted to sell securities backed by information about Fedorova's transaction where nobody loaned her any real money since the base securitization scheme was established and never retired.

Compl. at PageID.43.  Plaintiff continued:

> 116. In sum, Fedorova did not get what they [sic] applied for and the investment banks did not pay money to her or on her behalf because they wanted to loan money. They wanted to sell securities and they needed Fedorova to do it. This transaction was camouflaged by alleged involvement of Ginnie Mae as a Guarantor; and alleged "Title Insurance" - which added more realistic flavor to this fraud and not triggered any suspicions in Fedorova who only started to understand that she was royally defrauded after HUD finally responded her FOIA after two years of delays.

Compl. at PageID.44.

Fedorova cannot maintain a private civil claim against BONY for the alleged violation of 18 U.S.C. § 1001.  Nor can Fedorova enforce this federal criminal statute against BONY.  "[T]he general rule is that a private right of action is not maintainable under a criminal statute."  *American Postal Workers Union, AFL-CIO, Detroit Local v. Independent Postal System of America, Inc.*, 481 F.2d 90, 93 (6th Cir. 1973).  "Equally important is the firmly established principle that criminal statutes can only be enforced by the proper authorities of the United States

---

shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years."

Government and a private party has no right to enforce these sanctions." *Id.* (internal quotation marks omitted).

"[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). In short,

> "There is no authority to allow a private citizen to institute a criminal action in a federal court; that power is vested exclusively in the executive branch." *See United States v. Nixon*, 418 U.S. 683, 693, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *Williams v. Finnegan*, 2014 WL 2434590 at *2 (N.D. Ohio May 29, 2014). **Consequently, there exists no independent, private cause of action for the alleged violation of 18 U.S.C. § 1001**.

*Shoemake v. Mansfield City School District Board of Education*, 61 F. Supp. 3d 704, 711 (N.D. Ohio 2014) (emphasis added). In summary, Fedorova cannot maintain a federal fraud claim against BONY pursuant to 18 U.S.C. § 1001. Accordingly, BONY's motion to dismiss (ECF No. 75) should be granted.

### III.    BONY's motion for summary judgment pursuant to Fed. R. Civ. P. 56

In the alternative, BONY has included a motion for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). BONY's alternative motion for summary judgment should be denied for two reasons.

First, the alternative motion for summary judgment should be denied as moot because Fedorova failed to state a claim for relief against BONY.

Second, the alternative motion for summary judgment should be denied as premature. BONY's motion is based on the facts set forth in a three-page affidavit from Katherine Corbett, its "Vice President (Ginnie Mae Operations - Lead Manager)" (ECF No. 73, PageID.630-632). In her affidavit, Corbett states that while BONY "is the trustee of Ginnie Mae's Platinum Securities", it "does not own or hold the Plaintiff's mortgage loan for property located at 5757

Saggio Road, Hastings, Michigan", "does not have any involvement in foreclosing individual mortgages," "does not own or service Ms. Fedorova's mortgage loan," and, "has taken no part in any foreclosure on Ms. Fedorova's property." *Id*. at PageID.630-631.

There has been no discovery in this case. After BONY filed its dispositive motions, Fedorova filed motions seeking to obtain discovery from BONY and other defendants. In its response, BONY contended that Fedorova cannot obtain discovery because its motions to dismiss or for summary judgment are pending, no discovery conference has occurred as required by Fed. R. Civ. P. 26(f),[6] and Fedorova's request for discovery is premature based on the unresolved motion to dismiss. *See* BONY's Response (ECF No. 173, PageID.1262).

After the parties briefed the discovery motion, the Court stayed the litigation to allow the Court to address the numerous motions to dismiss filed in this lawsuit. *See* Order (ECF No. 189). The Court denied Fedorova's motion for discovery from BONY because it would defeat the purpose of the stay:

> As discussed, one purpose of the stay is to allow the Court to address defendants' motions to dismiss without subjecting the parties to discovery while these preliminary motions are resolved. Allowing plaintiff to conduct discovery would defeat that purpose. Accordingly, plaintiff's motions to obtain limited discovery from defendant BONY (ECF No. 152) and for leave to file a reply brief (ECF No. 184) are **DENIED**. If plaintiff's claims survive dismissal, then the parties will engage in discovery as provided by Fed. R. Civ. P. 26.

Order (ECF No. 203, PageID.1432).

Based on this record, BONY's motion for summary judgment is premature because Fedorova has had no opportunity to obtain discovery with respect to the matters raised in Corbett's Affidavit. While a party may move for summary judgment "at any time until 30 days after the

---

[6] Fed. R. Civ. P. 26(f)(1) ("Conference Timing") states, "Except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B) or when the court orders otherwise, the parties must confer as soon as practicable--and in any event at least 21 days before a scheduling conference is to be held or a scheduling order is due under Rule 16(b)."

close of discovery", *see* Fed. R. Civ. P. 56(b), "summary judgment is improper if the non-movant is not afforded a sufficient opportunity for discovery," *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 627 (6th Cir. 2002).  *See, e.g., McNeal v. Blackwell-Hatcher*, No. 08-10588, 2009 WL 236067 at *2, fn.1  (E.D. Mich. Jan. 29, 2009) ("Although the defendant has styled the motion as one for summary judgment in the alternative to the motion to dismiss, because a motion for summary judgment is generally disfavored before the opposing party has completed discovery, the Court will disregard the language seeking summary judgment and treat the motion as one solely for dismissal pursuant to Federal Rule of Civil Procedure 12(b).") (internal citation omitted).

Accordingly, for all of these reasons, defendant BONY's motion for summary judgment (ECF No. 75) should be denied.

### IV.    Fedorova's motion to strike the affidavit

Finally, Fedorova has filed a motion to strike Corbett's Affidavit.  It is unnecessary to address the merits of Corbett's Affidavit because BONY's alternative motion for summary judgment is both moot and premature.  Accordingly, Fedorova's motion to strike Corbett's Affidavit (ECF No. 124) should be denied.

### V.    RECOMMENDATION

For the reasons stated above,

I respectfully recommend that defendant Bank of New York Mellon's combined motion (ECF No. 75) be **GRANTED** as to the motion to dismiss, be **DENIED** as to the alternative motion for summary judgment, and that defendant be **DISMISSED** from this action.

11

I further recommend that plaintiff Fedorova's motion to strike the Corbett Affidavit (ECF No. 124) be **DENIED**.

Dated:  August 15, 2023                    /s/ Ray Kent
                                           RAY KENT
                                           United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).